UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE
SNOW

07 - 61241 CIV-COHN

Case No.

JACOB SCHWARTZ, Derivatively on Behalf
of PEDIATRIX MEDICAL GROUP, INC.,

Plaintiff,

vs.

ROGER J. MEDEL, CESAR L. ALVAREZ,
LAWRENCE M. MULLEN, JOSEPH M.
CALABRO, KARL B. WAGNER, THOMAS
W. HAWKINS, KRISTEN BRATBERG,
WALDEMAR A. CARLO, MICHAEL B.
FERNANDEZ, ROGER K. FREEMAN,
PAUL G. GABOS, ENRIQUE J. SOSA and
PASCAL J. GOLDSCHMIDT,

Defendants,

– and –

PEDIATRIX MEDICAL GROUP, INC., a
Florida corporation,

Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DEMAND FOR JURY TRIAL

VERIFIED DERIVATIVE COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY,
ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, WASTE OF CORPORATE ASSETS,
UNJUST ENRICHMENT AND GROSS MISMANAGEMENT

Case No. _____-Civ-_____

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Pediatrix Medical Group, Inc. ("Pediatrix" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Pediatrix insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Pediatrix insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since at least 1996.

2.      Between 1996 and 2006, Defendants also caused Pediatrix to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Pediatrix carried with them an exercise price that was ***not less than*** the fair market value of Pediatrix stock on the date of grant and issuance.

3.      In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By August 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $188 million worth of Pediatrix shares.

Case No. _____-Civ-_____

4.    Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as Florida law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Pediatrix to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Pediatrix executives; and (iii) subjected Pediatrix to potential liability from regulators, including the SEC and the IRS.

5.    Defendants' gross mismanagement and malfeasance over the past decade has exposed Pediatrix and its senior executives to criminal and civil liability for issuing false and misleading financial statements.  Specifically, Defendants caused or allowed Pediatrix to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures presented an inflated view of Pediatrix's earnings and earnings per share.

6.    Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Pediatrix.  The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds.  Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations as to void all grants made pursuant to the plans.  The Company has now been mentioned as one of several companies likely to have manipulated options. Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew

- 2 -

Case No. _____-Civ-_____

material non-public information regarding Pediatrix's internal control problems, abused their fiduciary relationship with the Company by selling over $188 million worth of their personally held shares at artificially inflated prices during the relevant period. This action seeks recovery for Pediatrix against these faithless fiduciaries, as Pediatrix's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under state law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

8.      This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

9.      This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.     Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Pediatrix is located in and conducts its business in this District. Further, one or more of the Defendants either resides in or maintains executive offices in this District.

- 3 -

Case No. _____-Civ-_____

## PARTIES

11.     Plaintiff Jacob Schwartz is a shareholder of Pediatrix, and holds and has continually held Pediatrix stock since September 19, 2005.

12.     Nominal party Pediatrix is a Florida corporation with its principal executive offices located at 1301 Concord Terrace, Sunrise, Florida.

13.     Defendant Roger J. Medel ("Medel") co-founded Pediatrix in 1979 and has been a director of the Company since its inception and Chief Executive Officer ("CEO") since March 2003. Previously, Medel served as President from the Company's inception until May 2000 and as CEO from its inception until December 2002.  Medel reassumed the position of President in March 2003 and served until May 2004, and additionally reassumed the position of CEO in March 2003. Because of Medel's positions, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the relevant period, Medel participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-public information regarding the Company, defendant Medel sold 4.3 million shares of Pediatrix stock for proceeds of over $118 million during the relevant period.

14.     Defendant Cesar L. Alvarez ("Alvarez") has served as a director of Pediatrix since the Company's inception in 1979, and as Chairman of the Board since May 2004. Because of Alvarez's position, he knew the adverse non-public information about the business of Pediatrix, as well as its

- 4 -

Case No. _____-Civ-_____

finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Alvarez participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

15.     Defendant Lawrence M. Mullen ("Mullen") was a director of Pediatrix from March 2004 until his resignation in December 2006. Previously, Mullen served as Vice President from May 1995 to April 2001, as Chief Financial Officer ("CFO") from May 1995 until August 1998 and Chief Operating Officer ("COO") from August 1998 until May 2000. Because of Mullen's positions, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Mullen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member of the Audit Committee, defendant Mullen was responsible for Pediatrix's public financial statements.

16.     Defendant Joseph M. Calabro ("Calabro") has served as President and COO of Pediatrix since May 2004. Calabro joined the Company in January 1996 as Chief Information Officer until he was appointed as Executive Vice President, Management in May 2000, serving in this capacity until his promotion to his current positions. Because of Calabro's positions, he knew

Case No. _____-Civ-_____

the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Calabro participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Calabro sold 818,568 shares of Pediatrix stock for proceeds of over $26 million during the relevant period.

17.     Defendant Karl B. Wagner ("Wagner") has served as CFO and Treasurer of Pediatrix since August 1998, and previously served as Controller from May 1997 until he was appointed to his current positions. Because of Wagner's positions, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Wagner participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Wagner, by his specialized financial expertise, was in a unique position to understand the business of Pediatrix, as well as its finances, markets and present and future business prospects. Based on his knowledge of material non-public information regarding the Company, defendant Wagner sold 565,002 shares of Pediatrix stock for proceeds of $18.5 million during the relevant period.

Case No. _____-Civ-_____

18.     Defendant Thomas W. Hawkins ("Hawkins") has served as Senior Vice President, General Counsel and Secretary of Pediatrix since June 2003. Because of Hawkins' positions, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Hawkins participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Hawkins sold 260,844 shares of Pediatrix stock for proceeds of over $8.9 million during the relevant period.

19.     Defendant Kristen Bratberg ("Bratberg") was President of Pediatrix from May 2000 until his resignation from the Company in March 2003, and additionally served as a director from May 2001 through March 2003. Bratberg joined the Company in November 1995 as Vice President, Business Development, and was appointed as Executive Vice President, Corporate Development in January 2000, serving in this capacity until May 2000. Because of Bratberg's positions, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Bratberg participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases

- 7 -

Case No. _____ -Civ- _____

and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Bratberg sold 633,332 shares of Pediatrix stock for proceeds of over $13.9 million during the relevant period.

20.    Defendant Waldemar A. Carlo ("Carlo") has been a director of Pediatrix since June 1999. Because of Carlo's position, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member (Chair) of the Compensation Committee, defendant Carlo controlled the other Defendants' stock option awards. During the relevant period, Carlo participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

21.    Defendant Michael B. Fernandez ("Fernandez") has been a director of Pediatrix since October 1995. Because of Fernandez's position, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. As a member of the Compensation Committee, defendant Fernandez controlled the other Defendants' stock option awards. As a member of the Nominating Committee, defendant Fernandez allowed the dissemination of the improper public statements described herein. During the relevant period, Fernandez participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and

Case No. _____-Civ-_____

SEC filings.  Based on his knowledge of material non-public information regarding the Company, defendant Fernandez sold 76,662 shares of Pediatrix stock for proceeds of over $1.8 million during the relevant period.

22.    Defendant Roger K. Freeman ("Freeman") has been a director of Pediatrix since May 2002.  Because of Freeman's position, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  As a member (Chair) of the Nominating Committee, defendant Freeman allowed the dissemination of the improper public statements described herein.  As a member of the Compensation Committee, defendant Freeman controlled the other Defendants' stock option awards.  During the relevant period, Freeman participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-public information regarding the Company, defendant Freeman sold 20,000 shares of Pediatrix stock for proceeds of $591,300 during the relevant period.

23.    Defendant Paul G. Gabos ("Gabos") has been a director of Pediatrix since November 2002.  Because of Gabos' position, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  As a member (Chair) of the Audit Committee,

Case No. _____-Civ-_____

defendant Gabos was responsible for Pediatrix's public financial statements. During the relevant period, Gabos participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

24.    Defendant Enrique J. Sosa ("Sosa") has been a director of Pediatrix since May 2004. Because of Sosa's position, he knew the adverse non-public information about the business of Pediatrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member of the Audit Committee, defendant Sosa was responsible for Pediatrix's public financial statements. As a member of the Nominating Committee, defendant Sosa allowed the dissemination of the improper public statements described herein. During the relevant period, Sosa participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

25.    Defendant Pascal J. Goldschmidt ("Goldschmidt") has been a director of Pediatrix since March 2006.

26.    The defendants identified in ¶¶13-15 and 20-25 are referred to herein as the "Director Defendants." The defendants identified in ¶¶13 and 16-18 are referred to herein as the "Officer Defendants." The Defendants identified in ¶¶13, 16-19 and 21-22 are referred to herein as the "Insider Selling Defendants."

Case No. _____-Civ-_____

## DEFENDANTS' DUTIES

27.     Each officer and director of Pediatrix named herein owed the Company and Pediatrix shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.   The conduct of Pediatrix's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Pediatrix.  Further, the misconduct of Pediatrix's officers has been ratified by Pediatrix's Board, which has failed to take any legal action on behalf of the Company against them.

28.     By reason of their positions as officers, directors and fiduciaries of Pediatrix and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Pediatrix and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Pediatrix in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Pediatrix and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.   In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Pediatrix to divert assets to themselves via improper and/or unlawful practices.  Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

29.     Because of their positions of control and authority as directors or officers of Pediatrix, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Pediatrix to

- 11 -

Case No. _____-Civ-_____

disseminate false Proxy Statements for 1996-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Pediatrix, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Pediatrix shareholders and the financial markets but failed to do so.

30.     Between 1996 and 2006, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was not less than the fair market value of Pediatrix stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until September 2006 that the stock option grants were repeatedly and consciously backdated to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period. Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to defendants between at least 1996 and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

31.     To discharge their duties, the directors of Pediatrix were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Pediatrix. By virtue of such duties, the officers and directors of Pediatrix were required, among other things, to:

- 12 -

Case No. _____-Civ-_____

(a)     manage, conduct, supervise and direct the business affairs of Pediatrix in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Pediatrix);

(b)     neither engage in self-dealing nor knowingly permit any officer, director or employee of Pediatrix to engage in self-dealing;

(c)     neither violate nor knowingly permit any officer, director or employee of Pediatrix to violate applicable laws, rules and regulations;

(d)     remain informed as to the status of Pediatrix's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f)     establish and maintain systematic and accurate records and reports of the business and affairs of Pediatrix and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

- 13 -

Case No. _____-Civ-_____

(g)     maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that Pediatrix's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

(h)     exercise control and supervision over the public statements to the securities markets and trading in Pediatrix stock by the officers and employees of Pediatrix; and

(i)     supervise the preparation and filing of any financial reports or other information required by law from Pediatrix and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of Pediatrix and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

32.     Each Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Pediatrix, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders which Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or directors of the Company during the relevant period has been ratified by the Director Defendants who comprised Pediatrix's entire Board during the relevant period.

Case No. _____-Civ-_____

33.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein, *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result, Pediatrix has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

    (a)     improvidently paid executive compensation;

    (b)     increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

    (c)     costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

    (d)     incurring possible IRS penalties for improperly reporting compensation.

34.     These actions have irreparably damaged Pediatrix's corporate image and goodwill. For at least the foreseeable future, Pediatrix will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Pediatrix's ability to raise equity capital or debt on favorable terms in the future is now impaired.

### AIDING AND ABETTING AND CONCERTED ACTION

35.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

36.     During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was

Case No. _____-Civ-_____

allowing its directors and senior officers to divert hundreds of millions of dollars to Pediatrix insiders and directors and causing Pediatrix to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at Pediatrix and the profits, power and prestige which Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Pediatrix, regarding Defendants' compensation practices and Pediatrix's financial performance.

37.     The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Pediatrix common stock so they could dispose of millions of dollars of their own Pediatrix stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

38.     Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Pediatrix's financial results.  Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

39.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary

- 16 -

Case No. _____-Civ-_____

wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

40.     Pediatrix is a healthcare services company that focuses on physician services for newborn, maternal-fetal and other pediatric subspecialty care. The Company's network comprises approximately 834 affiliated physicians, including 644 neonatal physician specialists who provide clinical care in 32 states and Puerto Rico, primarily within hospital-based neonatal intensive care units, to babies born prematurely or with medical complications. The Company's affiliated neonatal physician specialists staff and manage clinical activities at more than 240 hospitals, and its 86 affiliated maternal-fetal medicine subspecialists provide care to expectant mothers experiencing complicated pregnancies in many areas where its affiliated neonatal physicians practice. The Company's network includes other pediatric subspecialists, including 47 pediatric cardiologists, 41 pediatric intensivists and 16 pediatric hospitalists.

41.     Throughout the relevant period, Defendants caused Pediatrix to grant them millions of stock options permitting them to buy Pediatrix stock which they could in turn sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock at a certain price in the future. Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

42.     However, many of the hundreds of thousands of options granted to Pediatrix's executives had a hidden, valuable component: they were misdated, often making them even more

- 17 -

Case No. _____-Civ-_____

significantly valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.*, a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.*, a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.*, where there is a decision to issue a grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees, and although the work is not complete on those grants as of the stated grant date, that date is nonetheless used).

## STOCK OPTION GRANTS

43.     Certain of Pediatrix's manipulative stock option grants are described below (unadjusted for stock split):

**1997 Option Grants**

44.     Defendants dated many of Pediatrix's 1997 options to top executives on or about April 14, 1997 at $29.00 per share – the low of the month, just a week before the stock reached $32.87 per share. The stock later reached $34.12 per share in April 1997. Defendants Mullen and Bratberg and former officers Bruce Jordan and Brian Udell received 50,000, 50,000, 20,000 and 50,000 options, respectively, at this $29.00 exercise price.

**1998 Option Grants**

45.     Defendants dated many of Pediatrix's 1998 options to top executives on or about January 9, 1998 at $36.125 per share – the low of the month, just a week before the stock reached

Case No. _____-Civ-_____

$39.75 per share.  The stock closed as high as $42.31 per share in January 1998.  Defendants Mullen,

Wagner and Bratberg received 50,000, 15,000 and 50,000 options, respectively, at this $36.125

exercise price.

**2001 Option Grants**

46.     Defendants dated many of Pediatrix's 1999 option grants to top executives as of

January 5, 2001 at $21.38 per share – the low of the month – just five days later the stock closed at

$23.50 per share.  Defendants Bratberg, Calabro and Wagner received 50,000, 35,000 and 35,000

options, respectively, at this $21.38 exercise price.

47.     Below are graphs reflecting Pediatrix's grants which occurred right before significant

stock price increases (adjusted for stock splits):



- 19 -

Case No. _____-Civ-_____





Case No. _____-Civ-_____

48.     Complicating matters and magnifying the harm to Pediatrix, during the relevant
period, Pediatrix's internal controls and accounting controls with respect to option grants and
exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of
both grants and exercises to be manipulated and the Company's executive compensation expenses to
be materially understated.  They also allowed grant dates to be changed to provide executives with
more favorably priced options, in effect augmenting their compensation, with no benefit running to
the Company.

49.     Specifically, in many instances the reported dates Pediatrix stock options were
granted differed from the dates on which the options appear to have been actually granted.  The
practice applied to the overwhelming majority of stock option grants made during the relevant
period, which allowed executives and employees to make more money on their options because it set
a lower "strike price" at which the options could be exercised, allowing employees to take larger
profits when the stock price later rose. ***In almost every case of misdating, the price of Pediatrix
shares on the reported option-grant date was lower than the share price on the actual day the
options were issued.***

50.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to
Pediatrix a duty to ensure that the Company's financial reporting fairly presented, in all material
respects, the operations and financial condition of the Company.  In order to adequately carry out
these duties, it is necessary for the Defendants to know and understand the material non-public
information to be either disclosed or omitted from the Company's public statements.  This material
non-public information included the problems Pediatrix faced because of its deficient internal
controls.  Furthermore, Defendants who were members of the Audit Committee during the relevant

- 21 -

Case No. _____-Civ-_____

period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants who were officers of Pediatrix had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, Defendants who were directors of Pediatrix had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Pediatrix to the investing public and the Company's shareholders during the relevant period.

      51.    Specifically, since at least 1996, Defendants have caused Pediatrix to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

Case No. _____-Civ-_____

| FISCAL YEAR | REPORTED EARNINGS (in millions) | REPORTED DILUTED EARNINGS PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1996 | $13.12 | $0.45 |
| 1997 | $20.91 | $0.67 |
| 1998 | $29.10 | $0.91 |
| 1999 | $25.04 | $0.79 |
| 2000 | $10.99 | $0.47 |
| 2001 | $30.43 | $0.68 |
| 2002 | $68.78 | $1.31 |
| 2003 | $84.33 | $1.72 |
| 2004 | $98.28 | $1.97 |
| 2005 | $89.04 | $2.20 |

52.     Moreover, throughout the relevant period certain Defendants exercised many of these stock options contributing to their ability to sell over $188 million worth of Pediatrix stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| BRATBERG | 5/1/02 – 5/7/03 | 633,332 | $13,921,049 |
| CALABRO | 5/1/02 – 2/27/06 | 818,568 | $26,085,525 |
| CARLO | 12/10/99 | 900 | $3,686 |
| FERNANDEZ | 4/3/98 – 11/12/03 | 76,662 | $1,848,212 |
| FREEMAN | 2/19/04 | 20,000 | $591,300 |
| HAWKINS | 5/5/04 – 5/1/06 | 260,844 | $8,943,998 |
| MEDEL | 9/18/96 – 1/30/06 | 4,321,816 | $118,317,222 |
| WAGNER | 5/1/02 – 2/8/06 | 565,002 | $18,527,357 |
| TOTAL | | 6,697,124 | $188,238,349 |

53.     On August 3, 2006, the Company filed a Form 8-K with the SEC announcing that it had commenced an internal probe regarding its stock option granting practices.

54.     On December 6, 2006, Pediatrix filed a Form 8-K with the SEC disclosing deficiencies in its stock option granting practices. The Company further disclosed an investigation had been commenced by the SEC.

Case No. _____-Civ-_____

55.    On January 5, 2007, the Company filed a Form 8-K with the SEC, stating in part:

Pediatrix Medical Group, Inc., today announced that it has been notified that the U.S. Attorney's office in Miami is in the initial stages of an investigation of the Company's stock option grant practices, which are the subject of a previously announced review by the Company's Audit Committee. Pediatrix intends to cooperate fully with the U.S. Attorney's office on this matter. The Audit Committee is working to complete its review as soon as possible.

56.    Then, on February 28, 2007, Pediatrix issued a press release entitled " Pediatrix Provides Update on Stock Option Review, Expects to Delay 10-K Filing." The press release stated in part:

Pediatrix Medical Group, Inc. today announced an update of its previously disclosed review of historical stock option practices that is being conducted by the Audit Committee of its Board of Directors.

Following a review of draft findings related to the Company's stock option practices, Pediatrix's management has concluded, and the Audit Committee has agreed, that Pediatrix will need to restate its historical financial statements. The Company has concluded that it is appropriate to restate due to documented instances of intentional backdating by a former executive officer of Pediatrix that occurred in the granting of stock options prior to 2001.

The restatement is expected to include charges relating to these instances of backdating in periods prior to 2001 and misdating in those and subsequent periods of certain other option grants as a result of process deficiencies. The Company has not determined the amount of such charges, including non-cash compensation expense and the resulting tax and accounting impact, or which periods may require restatement. Based on its analysis to date, however, the Company believes that total additional non-cash compensation expense will not exceed the previously announced tentative calculation of $28 million on a pre-tax basis for the 1995 through 2006 period.

Separately, Pediatrix announced that its Board of Directors has approved the Company's participation in an Internal Revenue Service program to pay certain individual tax obligations for employees, other than executive officers, who exercised certain stock options during 2006. The program will cover non-executive officer employees who are subject to adverse income tax consequences, including any interest and penalties that result from a determination by the Audit Committee that their options had been issued at exercise prices that are lower than revised prices.

*        *        *

- 24 -

Case No. _____-Civ-_____

Pediatrix is also filing a Form 8-K stating that the Company's financial statements and earnings releases and similar financial communications relating to fiscal periods from January 1, 1995, through March 31, 2006, should no longer be relied upon.

As a result of the ongoing review of the Company's stock option practices, Pediatrix will delay the filing of its Annual Report on Form 10-K for the year ended December 31, 2006. The Audit Committee, the Company and its independent public accountants are working to complete the review and its financial impact as soon as possible.

57.    Then, on July 26, 2007, the Company issued a press release entitled "Pediatrix Medical, Inc. Announces Results of Stock Option Review." The press release stated in part:

Pediatrix Medical Group, Inc., the nation's leading provider of neonatal, maternal-fetal and pediatric subspecialty physician services, announced today that the Audit Committee of its Board of Directors has completed an independent comprehensive review of Pediatrix's stock option practices and reported the findings to the Board of Directors. Based upon the Audit Committee's findings, the Company has determined that it will have to record non-cash pre-tax compensation expense for the period from January 1, 1995 to March 31, 2006 currently estimated at approximately $33 million.

Audit Committee Findings

On August 3, 2006, the Company announced that the Audit Committee was reviewing the Company's practices relating to stock option grants. The Audit Committee engaged independent counsel, which engaged forensic accountants and other experts to assist the Audit Committee with the review. The review covered all stock options granted from the date of the Company's initial public offering in September 1995 through June 2006.

The Audit Committee reviewed the facts and circumstances surrounding options to purchase approximately 20 million shares of common stock, as well as approximately 700,000 shares of restricted stock, granted pursuant to more than 1,300 grants on 114 dates. More than 32 million physical and electronic documents were searched and 35 interviews with more than a dozen current and former directors, officers and employees were conducted.

Following are the key findings based on the evidence reviewed:

–    The Audit Committee identified 56 grants made on seven dates between April 1997 and August 2000 which appear to have been backdated. No instances of backdating were identified after August 2000. The Audit Committee used the term "backdating" to connote

Case No. _____-Civ-_____

deliberate selection of grant measurement dates to obtain an option exercise price that was lower than would otherwise be the case. The Audit Committee used this term to describe grants which apparently involved deliberate, opportunistic use of market prices.

– The Audit Committee did not find intentional misconduct by any of the Company's current executive officers.

– The Audit Committee believes that it received full cooperation from all of the Company's current executive officers.

– The Audit Committee did not find evidence establishing that the Board, any committee of the Board, or any non-executive director participated in backdating or was aware of backdating during the time that it occurred.

– During the time period from April 1997 to August 2000 when backdating occurred, the administration and processing of option grants was directed by a former officer who later became a director of the Company. This individual continued to direct the Company's options program after resigning as an officer in May 2000, while remaining with the Company to work on special projects. During this time period, this individual appears to have been responsible for selecting favorable dates for option grants in all but one instance where a record was located regarding favorable date selection. The Audit Committee concluded that this individual knew or should have known the accounting implications of his actions. Further, the Audit Committee identified three occasions on which this individual was able to benefit by affecting the measurement date of options that were granted to him. The Audit Committee found that this individual realized approximately $12,000 from the backdating of these options based on the revised measurement dates assigned to them.

– The Audit Committee identified numerous instances in which applicable accounting principles were misapplied and/or process deficiencies or administrative errors occurred resulting in the application of inappropriate measurement dates to option grants. The Audit Committee also identified inadequate record keeping, documentation, disclosure and systems with respect to the stock option grant process, including records of meetings, which in some cases, could not be corroborated in support of option grants on measurement dates that corresponded to periodic low points in the Company's stock price.

– The Audit Committee determined that, although they did not engage in intentional misconduct, current senior management did not adequately ensure that these processes and systems were proper, including the Company's current President and Chief Operating Officer and Chief Financial Officer, who were also found to have played a role in the granting of stock options to others that involved errors and process deficiencies.

- 26 -

Case No. _____-Civ-_____

    &mdash;    With respect to the Company's current executive officers, the Audit Committee found that senior management should not have permitted the individual described above to continue to manage the options program after his resignation as a Company officer in May 2000. The Audit Committee found that, during the period in which backdating occurred, Roger J. Medel, M.D., the Company's CEO, was actively involved in determining grant recipients and amounts and was also party to e-mail correspondence concerning the selection of favorable dates for option grants; however, Dr. Medel was not the recipient of any of the grants found to be backdated. In addition, the Audit Committee found that on one occasion in 1997, Dr. Medel directed the selection of a favorable grant date for a group of regional medical officers, one of whom was his spouse, a founding physician of the Company and full-time employee at the time of the grant. Based on its review, however, the Audit Committee believes that Dr. Medel was not aware of the accounting implications of such grants. Further, based on its review, the Audit Committee believes that Dr. Medel reasonably relied upon senior Company executives as to the administration of the Company's equity compensation plans and the accounting for awards. The Audit Committee found, however, that Dr. Medel bore overall responsibility for assuring that management's implementation of its compensation programs was appropriate but that he did not adequately assure such appropriate implementation.

    &mdash;    In light of the evidence reviewed, the Audit Committee found that 640 grants in total required revised measurement dates, variable accounting or the recognition of compensation expense.

Audit Committee Recommendations

Although the Company has taken steps since 2003 to improve its option grant procedures, the Audit Committee also recommended the formal adoption of a number of additional actions be taken. These actions have been reviewed and approved by the Board. These improved procedures include, among others:

    &mdash;    Eliminating all delegated authority of management (suspended by management following commencement of the investigation) to make equity awards and requiring all grants to be approved by the Compensation Committee or the full Board of Directors.

    &mdash;    Requiring that the effective date of any grant of any equity award must be not earlier than the meeting at which such grant is approved or the date that the last signature necessary for a written consent approving a grant is received by the Company's general counsel.

    &mdash;    Although the Compensation Committee or the Board may approve grants of equity awards at any time, such grants to then existing employees may be effective only on a date within a "trading window" as defined by the Company's Policy Statement on Inside Information

Case No. _____-Civ-_____

and Insider Trading (effective February 2004), as amended from time to time.

— Requiring, in the case of equity grants to newly hired employees that the effective date of the equity grant may not be earlier than the date of employment is effective for payroll purposes.

The Audit Committee also recommended a number of measures to further support the Company's enhanced processes related to stock option granting and administration, to provide for ongoing monitoring and assessment thereof, as well as continued cooperation with regulatory and governmental authorities.

In addition, the Audit Committee found that Joseph M. Calabro, the Company's President and Chief Operating Officer, and Karl B. Wagner, the Company's Chief Financial Officer, were included as recipients of options granted in 1998 and 1999 on which backdating was identified (although they were not found to have played a role in the backdating of such options). Messrs. Calabro and Wagner, along with Dr. Medel's spouse, have offered to pay the Company the difference between the proceeds they received upon exercise of the backdated options and the proceeds they would have received had the exercise price for these grants been based upon the revised measurement dates. The Audit Committee has recommended that the Company accept these offers. These offers will result in the payment of $144,950, $154,975 and $519,000 from Messrs. Calabro, Wagner and Dr. Medel's spouse, respectively. No other current executive officer, including Dr. Medel, or director received options in any of the grants which the Audit Committee found to have been backdated.

Pediatrix's Chairman of the Board, Cesar L. Alvarez, said, "Our Audit Committee has conducted a very thorough independent review and we have implemented its recommendations. We deeply regret the issues that were identified by the independent review; however, we are pleased that it did not find any intentional misconduct by any of our present officers and directors. Our Board of Directors continues to have full confidence in the Pediatrix management team."

As previously announced, based upon the Audit Committee's review, certain previously filed financial statements of the Company will be restated. The Company is working to complete its Quarterly Reports on Form 10-Q for the quarters ended June 30, and September 30, 2006, and March 31, 2007 and its Annual Report on Form 10-K for the year ended December 31, 2006 (which will contain the restated financial statements) as soon as practicable.

The Company voluntarily contacted the SEC regarding the Audit Committee's review and is cooperating with the SEC's now formal investigation. The Company has also had discussions with the U.S. Attorney's office for the

Case No. _____-Civ-_____

Southern District of Florida regarding the Audit Committee's review. The Company intends to continue full cooperation with the U.S. Attorney's office and the SEC.

The Company also announced that the Board had implemented the previously disclosed program intended to protect employees from certain adverse tax consequences resulting from their options having been granted originally at prices lower than the revised prices.

58.     In effect, during the relevant period, the Defendants caused Pediatrix's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Pediatrix to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Pediatrix's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

59.     Plaintiff brings this action derivatively in the right and for the benefit of Pediatrix to redress injuries suffered and to be suffered by Pediatrix as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

60.     Plaintiff will adequately and fairly represent the interests of Pediatrix and its shareholders in enforcing and prosecuting its rights.

Case No. _____-Civ-_____

61.     Plaintiff is an owner of Pediatrix stock and was an owner of Pediatrix stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

62.     On May 30, 2007, plaintiff made a pre-suit demand on the Pediatrix Board to take legal action against Defendants, which the Pediatrix Board rejected. The Board has refused to take adequate remedial action against Defendants despite the fact that the Company has admitted that improper backdating had occurred at the Company. In any event, the Pediatrix Board is neither independent nor disinterested in the outcome of this litigation because:

        (a)     The members of Pediatrix's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

        (b)     The Pediatrix Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Pediatrix's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate officers, employees and directors and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, the Director Defendants are charged with the management of the Company and to conduct its business

Case No. _____-Civ-_____

affairs. Defendants breached the fiduciary duties that they owed to Pediatrix and its shareholders in that they failed to prevent and correct the improper stock option granting and financial reporting. Certain directors are also dominated and controlled by other directors and cannot act independently of them. Thus, the Pediatrix Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

      (c)    The acts complained of constitute violations of the fiduciary duties owed by Pediatrix's officers and directors and these acts are incapable of ratification.

      (d)    The members of Pediatrix's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.

      (e)    Any suit by the current directors of Pediatrix to remedy these wrongs would likely further expose the liability of Defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

      (f)    Pediatrix has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or others who were responsible for that wrongful conduct to attempt to recover for Pediatrix any part of the damages Pediatrix suffered and will suffer thereby.

Case No. _____-Civ-_____

(g)     In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other Defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties. This they will not do.

(h)     Pediatrix's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Pediatrix. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by Pediatrix against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Pediatrix, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(i)     In order to bring this action for breaching their fiduciary duties, the members of the Pediatrix Board would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

- 32 -

Case No. _____-Civ-_____

63.    Plaintiff has not made any demand on shareholders of Pediatrix to institute this action since such demand would be a futile and useless act for the following reasons:

(a)    Pediatrix is a publicly traded company with approximately 48 million shares outstanding, and thousands of shareholders;

(b)    making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)    making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON PEDIATRIX'S FINANCIAL STATEMENTS

**The Fiscal 1996 Form 10-K405**

64.    On or about March 31, 1997, the Company filed its fiscal 1996 Form 10-K405 with the SEC.  The fiscal 1996 Form 10-K405 was simultaneously distributed to shareholders and the public.  The fiscal 1996 Form 10-K405 included Pediatrix's 1996 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options.  As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1997 Form 10-K**

65.    On or about March 31, 1998, the Company filed its fiscal 1997 Form 10-K with the SEC.  The fiscal 1997 Form 10-K was simultaneously distributed to shareholders and the public.  The fiscal 1997 Form 10-K included Pediatrix's 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the

Case No. _____-Civ-_____

backdated stock options.  As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1998 Form 10-K**

66.     On or about March 26, 1999, the Company filed its fiscal 1998 Form 10-K with the SEC.  The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included Pediatrix's 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options.  As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K**

67.     On or about March 27, 2000, the Company filed its fiscal 1999 Form 10-K with the SEC.  The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included Pediatrix's 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options.  As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2000 Form 10-K405**

68.     On or about March 16, 2001, the Company filed its fiscal 2000 Form 10-K405 with the SEC.  The fiscal 2000 Form 10-K405 was simultaneously distributed to shareholders and the public.  The fiscal 2000 Form 10-K405 included Pediatrix's 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting

Case No. _____-Civ-_____

for the backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K**

69.     On or about March 29, 2002, the Company filed its fiscal 2001 Form 10-K with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Pediatrix's 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

70.     On or about March 31, 2003, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Pediatrix's 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

71.     On or about March 12, 2004, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Pediatrix's 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the

Case No. _____-Civ-_____

backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2004 Form 10-K**

72.    On or about March 11, 2005, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2004 Form 10-K included Pediatrix's 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2005 Form 10-K**

73.    On or about March 7, 2006, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Pediatrix's 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Pediatrix's compensation expense was understated and its net earnings were overstated.

## DEFENDANTS' SCHEME BEGINS TO UNRAVEL

74.    The 1996-2006 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between at least 1996 and 2006. Defendants have been unjustly enriched at the expense of Pediatrix, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not

Case No. _____-Civ-_____

been backdated.  Each dollar diverted to Defendants via the option backdating scheme has come at the expense of the Company.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

75.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.  Given the many times Pediatrix's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

76.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Pediatrix, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

77.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Pediatrix's public investors that Pediatrix's option grants were being administered by a committee of independent directors and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

- 37 -

Case No. _____-Civ-_____

78.     Pediatrix's public investors had no reason to know of the Defendants' breaches of

their fiduciary duties until August 3, 2006, when the Company announced its internal probe of its

historical stock option granting practices.  On December 6, 2006, Pediatrix filed a Form 8-K with the

SEC disclosing deficiencies in its stock option granting practices.  The Company further disclosed an

investigation had been commenced by the SEC.

79.     On January 5, 2007, the Company filed a Form 8-K with the SEC, stating in part:

> Pediatrix Medical Group, Inc., today announced that it has been notified that the U.S.
> Attorney's office in Miami is in the initial stages of an investigation of the
> Company's stock option grant practices, which are the subject of a previously
> announced review by the Company's Audit Committee. Pediatrix intends to
> cooperate fully with the U.S. Attorney's office on this matter. The Audit Committee
> is working to complete its review as soon as possible.

80.     Then, on February 28, 2007, Pediatrix issued a press release, stating in part:

> Pediatrix Medical Group, Inc. today announced an update of its previously disclosed
> review of historical stock option practices that is being conducted by the Audit
> Committee of its Board of Directors.
>
> Following a review of draft findings related to the Company's stock option
> practices, Pediatrix's management has concluded, and the Audit Committee has
> agreed, that Pediatrix will need to restate its historical financial statements. The
> Company has concluded that it is appropriate to restate due to documented instances
> of intentional backdating by a former executive officer of Pediatrix that occurred in
> the granting of stock options prior to 2001.
>
> The restatement is expected to include charges relating to these instances of
> backdating in periods prior to 2001 and misdating in those and subsequent periods of
> certain other option grants as a result of process deficiencies. The Company has not
> determined the amount of such charges, including non-cash compensation expense
> and the resulting tax and accounting impact, or which periods may require
> restatement. Based on its analysis to date, however, the Company believes that total
> additional non-cash compensation expense will not exceed the previously announced
> tentative calculation of $28 million on a pre-tax basis for the 1995 through 2006
> period.
>
> Separately, Pediatrix announced that its Board of Directors has approved the
> Company's participation in an Internal Revenue Service program to pay certain

Case No. _____-Civ-_____

individual tax obligations for employees, other than executive officers, who exercised certain stock options during 2006. The program will cover non-executive officer employees who are subject to adverse income tax consequences, including any interest and penalties that result from a determination by the Audit Committee that their options had been issued at exercise prices that are lower than revised prices.

\* \* \*

Pediatrix is also filing a Form 8-K stating that the Company's financial statements and earnings releases and similar financial communications relating to fiscal periods from January 1, 1995, through March 31, 2006, should no longer be relied upon.

As a result of the ongoing review of the Company's stock option practices, Pediatrix will delay the filing of its Annual Report on Form 10-K for the year ended December 31, 2006. The Audit Committee, the Company and its independent public accountants are working to complete the review and its financial impact as soon as possible.

81.     Finally, as fiduciaries of Pediatrix and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Pediatrix's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the Pediatrix Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

### COUNT I

#### Violations of §14(a) of the Exchange Act Against All Defendants

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

83.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to

Case No. _____-Civ-_____

state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

84.     The 1996-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Pediatrix to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1996.

85.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

86.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

87.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.     At all relevant times, Defendants, as directors and/or officers of Pediatrix, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

Case No. _____-Civ-_____

90.     In breach of their fiduciary duties owed to Pediatrix and its shareholders, the Defendants caused Pediatrix, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Pediatrix.  By this wrongdoing, the Defendants breached their fiduciary duties owed to Pediatrix and its shareholders.

91.     The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

92.     As a result of Defendants' misconduct, Pediatrix has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

93.     Plaintiff demands an accounting be made of all stock option grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

94.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

95.     Each of the Defendants agreed to and did participate with Medel and Alvarez and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

- 41 -

Case No. _____-Civ-_____

96.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Pediatrix and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Pediatrix and its shareholders.

97.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Pediatrix and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

98.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Pediatrix and its public shareholders.

99.     As a proximate result of Defendants' conduct, in concert with Medel and Alvarez, Pediatrix has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

100.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

101.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Pediatrix, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Pediatrix. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Pediatrix.

- 42 -

Case No. _____-Civ-_____

102.    Defendants' conduct constituted an abuse of their ability to control and influence Pediatrix.

103.    By reason of the foregoing, Pediatrix has been damaged.

## COUNT V

### Gross Mismanagement Against All Defendants

104.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

105.    Defendants had a duty to Pediatrix and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Pediatrix.

106.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Pediatrix in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Pediatrix's affairs and in the use and preservation of Pediatrix's assets.

107.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Pediatrix to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Pediatrix, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Pediatrix.

108.    By reason of the foregoing, Pediatrix has been damaged.

Case No. _____-Civ-_____

## COUNT VI

### Constructive Fraud Against All Defendants

109.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

110.    As corporate fiduciaries, Defendants owed to Pediatrix and its shareholders a duty of candor and full accurate disclosure regarding the true state of Pediatrix's business and assets and their conduct with regard thereto.

111.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Pediatrix's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Pediatrix. Thus they have committed constructive fraud and violated their duty of candor.

112.    By reason of the foregoing, Pediatrix has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

113.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

114.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Pediatrix to waste valuable corporate assets.

115.    As a result of Defendants' corporate waste, they are liable to the Company.

Case No. _____-Civ-_____

## COUNT VIII

### Unjust Enrichment Against All Defendants

116.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Pediatrix, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

118.    All the payments and benefits provided to the Defendants were at the expense of Pediatrix. The Company received no benefit from these payments. Pediatrix was damaged by such payments.

119.    Certain of the Defendants sold Pediatrix stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Pediatrix. A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT IX

### Against the Officer Defendants for Rescission

120.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

121.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Pediatrix entered into during the relevant period were obtained through Defendants' fraud, deceit and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts

Case No. _____-Civ-_____

regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Pediatrix shareholders and filed with the SEC.

122.   All contracts which provide for stock option grants between the Officer Defendants and Pediatrix and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

123.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Pediatrix common stock on the basis of such information.

125.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Pediatrix common stock.

126.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Pediatrix common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

Case No. _____-Civ-_____

127.     Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.     Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.     Directing Pediatrix to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)     a proposal requiring that the office of CEO of Pediatrix and Chairman of the Pediatrix Board of Directors be permanently held by separate individuals and that the Chairman of the Pediatrix Board meets rigorous "independent" standards;

Case No. _____-Civ-_____

   (ii)  a proposal to strengthen the Pediatrix Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

     (iii)  appropriately test and then strengthen the internal audit and control function;

     (iv)  rotate independent auditing firms every five years;

     (v)  control and limit insider stock selling and the terms and timing of stock option grants; and

     (vi)  reform executive compensation.

  D.  Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

  E.  Awarding punitive damages;

  F.  As to all improperly dated and/or improperly priced options that have been exercised, ordering Defendants to make a payment to the Company in an amount equal to the difference between the prices at which the options were exercised and the exercise prices the options should have carried if they were priced at fair market value on the actual date of grant;

  G.  As to all improperly dated and/or improperly priced options that have been granted but not yet exercised or expired, ordering the Company to rescind such options so they carry the exercise prices they should have carried if they were priced at fair market value on the actual date of grant;

  H.  Awarding costs and disbursements of this action, including reasonable attorneys', accountants' and experts' fees; and

  I.  Granting such other and further relief as this Court may deem just and proper.

- 48 -

Case No. _____-Civ-_____

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 24, 2007

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
JACK REISE
Florida Bar No. 058144

             JACK REISE

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@lerachlaw.com
jreise@lerachlaw.com

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZIMMERMAN, LEVI & KORSINSKY, LLP
EDUARD KORSINSKY
39 Broadway, Suite 1601
New York, NY  10006
Telephone:  212/363-7500
212/363-7171 (fax)

Attorneys for Plaintiff

G:\jstein\Pediatrix\Cpt Pediatrix Med Grp Derv (2).doc

## VERIFICATION

I, Jacob Schwartz, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of PEDIATRIX MEDICAL GROUP, INC. and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock since September 19, 2005.

August 20, 2007

Jacob Schwartz

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

JACOB SCHWARTZ, Derivatively on Behalf of PEDIATRIX MEDICAL GROUP, INC.,

## DEFENDANTS

ROGER J. MEDEL, CESAR L. ALVAREZ, LAWRENCE M. MULLEN, JOSEPH M. CALABRO, KARL B. WAGNER, THOMAS W. HAWKINS, KRISTEN BRATBERG, WALDEMAR A. CARLO, MICHAEL B. FERNANDEZ, ROGER K. FREEMAN, PAUL G. GABOS, ENRIQUE J. SOSA and PASCAL J. GOLDSCHMIDT

**07-61241 CIV-COHN**

**MAGISTRATE JUDGE**

— and — **SNOW**

PEDIATRIX MEDICAL GROUP, INC., a Florida corporation, Nominal Defendant.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Kings County, NY**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(C) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JACK REISE, LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 E. PALMETTO PARK RD., SUITE 500, BOCA RATON, FL 33432
Telephone: (561) 750-3000

ATTORNEYS (IF KNOWN)

07cv61241-JIC/LSS

(d) CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   (BROWARD),   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE,   HIGHLANDS,   ALACHUA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
§ 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)

LENGTH OF TRIAL
via _10_ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P 23
DEMAND $_____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions)
JUDGE _____  DOCKET NUMBER _____

DATE **August 30, 2007**

SIGNATURE OF ATTORNEY OF RECORD
**Jack Reise**

FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT **350.00**  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**540862**